# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BECKLEY DIVISION

**UNITED STATES OF AMERICA,**

**VS.**                                                                                           **CASE NO. 5:25-MJ-00015**

**JORGE GOMEZ JIMENEZ**

### MEMORANDUM OPINION AND ORDER FOR RELEASE

On May 28, 2025, came the United States, by Jonathan T. Storage, Assistant U.S. Attorney, and the Defendant, in custody of the U.S. Marshals Service, and by his counsel, Willard Clinton Carte, Assistant Federal Public Defender, for a preliminary and detention hearing[1] concerning the criminal complaint charging the Defendant with violating 18 U.S.C. § 1546(a), fraud and misuse of visas, permits, and other documents. During the hearing, the Government argued that detention was warranted because the U.S. Immigration and Customs Enforcement ("ICE") has a detainer on the Defendant and that ICE would almost immediately remove the Defendant from this jurisdiction to be immediately deported back to Mexico; the Defendant argued that the Government failed to demonstrate that the Defendant is a risk of flight, or a danger to the community at large, therefore, detention is unnecessary. Following the detention hearing, the undersigned invited counsel to submit briefs supporting their respective arguments as to whether detention is warranted in this case for further consideration. (See ECF Nos. 13, 14)

In its *Motion for Detention Hearing*, filed on May 19, 2025, pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f), the Government moved for pretrial detention specifically alleging that the Defendant posed a "serious risk [that he would] flee" citing 18 U.S.C. § 3142(f)(2)(A). (ECF

---

[1] The undersigned found probable cause for the Complaint to move forward. However, for purposes herein, the detention pending resolution of this criminal proceeding is the only issue remaining to be decided.

1

No. 4 at ¶ 1) In the ***Government's Brief in Support of Pretrial Detention*** (ECF No. 13), the Government continued its pursuit for pretrial detention based entirely on the ICE detainer, indicating that the Defendant understood that should he be released, he will be deported, which serves his interests, as he will avoid criminal prosecution because he will be removed from this country without any finding of guilt or innocence. Notably absent from the Government's argument is any reference to the "serious risk [that the] defendant [would] flee" as asserted in the ***Motion for Detention Hearing*** (ECF No. 4).

In response, the Defendant observed that there was no evidence presented that the Defendant was a serious flight risk or a danger to the community, and the mere existence of an ICE detainer does not satisfy even the preponderance of the evidence standard to justify detention. For the reasons set forth *infra*, the Court **FINDS** the Government may not seek detention in this matter and furthermore has not met its burden in proving to the Court that the Defendant presents a serious risk of flight.

Under the Bail Reform Act, pretrial detention motions proceed through a two-step process: first, there must be a basis to move for a detention hearing; second, if a hearing is permissible, the court must find detention is appropriate based on risks of flight or danger to the community that cannot be addressed by a combination of release conditions. See United States v. Hernandez-Cerrato, No. MJM-23-419, 2024 WL 1532748, at *3 (D. Md. Apr. 9, 2024) (noting the Bail Reform Act's "two-step process for detaining an individual before trial") (internal quotation marks and citations omitted); *accord* United States v. White, No. 21-mj-4070, 2021 WL 2155441, at *3-6 (M.D. Tenn. May 27, 2021). On the threshold issue of whether a detention hearing may occur, the Bail Reform Act permits motions for pretrial detention based on certain types of offenses. See 18 U.S.C. § 3142(f)(1). Apart from those enumerated offenses, the Bail Reform Act permits the

government (and the Court) to invoke a detention hearing where a case involves "(A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). Only after the government satisfies one of these provisions, the Court proceeds to determine whether to order release, which is the default conclusion, or whether to order detention based on the absence of conditions or "combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g); see also, United States v. Mejias-Mejias, 2025 WL 846435, at *1-2 (D. Md. Mar. 18, 2025). Moreover, Section 3142(b), provides that a defendant *must be released* on personal recognizance or unsecured personal bond *unless* the judicial officer determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." (*emphasis* added)

  Therefore, the threshold question is whether the Government can even seek detention in this matter based upon the facts as known to the Court: assuming the Government meets the threshold question, the next question the Court must address is whether the Government has shown by a preponderance of the evidence that there is a serious risk that the Defendant will flee due to the ICE detainer. Stated another way, the question presented is: does the mere fact that the Defendant is subject to an ICE detainer, which may result in the Defendant being deported by the United States, satisfy the requirement that the United States establish by a preponderance of the evidence that the Defendant is a serious risk of flight?

  As an initial matter, the undersigned notes the Defendant has not been charged with any of the enumerated offenses listed under Section 3142(f)(1) – more importantly, notwithstanding the

3

ICE detainer, there had been no demonstration that this Defendant presented a serious risk of flight, let alone any other factor listed under Section 3142(f)(2). It is not lost on the Court that the Government's **Brief** is completely silent on the threshold question as to whether the Government can even seek a detention hearing in this matter. While the Government asserted in its **Motion for Detention Hearing** (ECF No. 4) that there was a "serious risk defendant will flee", the words "serious" and "flee" do not appear anywhere in the **Government's Brief in Support of Pretrial Detention**. (ECF No. 13). The Government appears to abandon that basis for detention, and instead argues that the serious risk of flight is due to the imminent deportation of the Defendant on account of the ICE detainer. However, the Government has cited no case that stands for that proposition.

Nevertheless, regarding § 3142(f)(2)(a), a district court has noted:

> "There is limited authority on what constitutes a "serious risk that such person will flee." The language and structure of the Bail Reform Act provide some guidance, as the Act addresses questions of flight and nonappearance in three different ways. Under § 3142(f)(2)(a)—the threshold showing required here—the government must prove that the case involves a "serious risk that such person will flee." Under § 3142(d), the Act provides for temporary detention in some circumstances where a defendant "may flee." And under § 3142(e), part of the inquiry is whether there are conditions that "will reasonably assure the appearance of the person." Where Congress uses different language within the same statute, courts presume Congress meant the language to bear different meanings. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). "The Bail Reform Act's detention provisions seem to draw an important distinction between nonappearance risk broadly and risk of flight more specifically." *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441 at *10 (M.D. Tenn. May 27, 2021) (quoting Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 701 (2018)); *see also id.* at *6 ("Congress could have drafted the statute so as to omit any requirement for detention that the case involve a 'serious risk of flight' and to direct courts to require only that the case involve a risk of non-appearance (that cannot adequately be mitigated by conditions of release). It did not do so.")."

<u>United States of America v. Jose Hernandez Cerrato</u>, No. 1:23-cr-00419-MJM-1, 2024 WL 1329296, at *2 (D. Md. Mar. 28, 2024).

Based on the evidence before it, the Court concludes that the Government cannot seek detention in this case, as it has failed to establish any of the factors under Section 3142(f) for detention. Thus, as a preliminary matter, the undersigned **FINDS** that the Government has failed to establish good grounds for detaining this Defendant.

As an additional matter, even if the Government could have established a basis for detention, in consideration of the factors under Section 3142(g), the undersigned finds that detention would still not be warranted in this case: for starters, while the weight of the evidence against the Defendant is sound, the Defendant does not have a criminal history; he is very young (19 years of age); and, upon his arrest, the Defendant was employed, and has indicated in his Financial Affidavit that he will still have a job after arrest. Indeed, there is no evidence before this Court that the Defendant was on probation or parole or other release pending trial when he was arrested. While it is unknown at this time the extent of the Defendant's community ties in this District, or the length of his residency, there is also no evidence of alcohol or other substance abuse, or prior conduct that justifies detention. Significantly, there is no evidence that the Defendant has failed to appear before any court for any other proceedings. In short, notwithstanding the fact that the Defendant is facing a felony, which is a serious offense, it is not of a nature that intrinsically poses a danger to any person or the community in the event the Defendant were to be released and exposes the Defendant to no more than five years in prison if convicted.[2]

As noted *supra*, ICE lodged a detainer against this Defendant, and, according to the Government, upon his release, he will be immediately transferred to the custody of ICE, and likely immediately deported. Though this could be an issue to the extent that the Defendant may not

---

[2] During oral arguments on the matter at the hearing held on May 28, 2025, the Government readily admitted that there was no evidence that the Defendant was a danger to any other person or the community.

appear before the Court for future hearings, this is not the product of the Defendant's own volition, but due to the action of another government agency. In short, this is not the "serious risk that such person will flee" envisioned under Section 3142(f)(2)(A). See United States v. Mejias-Mejias, 2025 WL 846435, at *3 ("[N]on-appearance caused by the action of another entity – including a different government agency – does not suggest that the accused chose to flee and not appear in court.") (collecting cases); see also, United States v. Leon-Silva, 2023 WL 2795810, at *2 (E.D. Va. Apr. 5, 2023) (finding that "the existence of a detainer is not dispositive" when conducting the analysis required by § 3142(g)(1)-(4)); United States v. Vasquez-Robles, 2025 WL 1090884, at *5 (E.D. Va. Apr. 7, 2025) (same); United States v. Ailon-Ailon, 875 F.3d 1334, 1337 (10th Cir. 2017).

For the reasons stated herein, the Court **FINDS** that the Government has not met its burden of seeking detention in this matter and furthermore has not demonstrated by preponderant evidence that the Defendant is a serious risk of flight under 18 U.S.C. § 3142(f)(2). The Court hereby **ORDERS** the Defendant shall forthwith be released from U.S. Marshal custody[3] on his personal recognizance[4] on the following conditions:

1. If released by ICE, he must forthwith report to the U.S. Probation Office for the Southern District of West Virginia in Beckley;
2. He must not violate any federal, state or local laws while on release;
3. He must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702;

---

[3] Upon the release of the Defendant from the custody of the U.S. Marshal, and based upon the representation of the Government, the Defendant will remain detained on the ICE detainer pending further action of ICE.

[4] While it is the practice of this District to release defendants on an unsecured bond of ten thousand dollars ($10,000.00), since this Defendant is subject to an ICE detainer, the necessity of money bond does not appear to be required.

4. He must advise the court or pretrial services office or supervising officer in writing before making a change of residence or telephone number;

5. He must not obtain new travel documentation;

6. He must reside at the address as listed in the Defendant's Pretrial Services Report or provide a new address where he will reside forthwith;

7. He must remain within the Northern and/or Southern District of West Virginia[5];

8. He must not have access to any firearms or other destructive device;

9. He must submit to substance abuse testing;

10. He must not use any controlled substance unless it is prescribed by a licensed medical provider;

11. He is subject to drug testing and treatment if deemed necessary by Probation; and

12. He must report to the United States Probation Office, as soon as possible, any contact with law enforcement.

The U.S. Marshal is **ORDERED** to **RELEASE** the Defendant from its custody.

### Government's Request for a Stay

To the extent the Government has requested the Court to stay this Order, the undersigned **DENIES** same: in consideration of the four factors[6] set forth in Nken v. Holder, 556 U.S. 418, 434 (2009) to stay an order of release, the undersigned **FINDS** that in support of the first factor, there has been no showing that the Government's success on appeal is likely because the Government did not have grounds to seek detention, and because this Defendant does not pose a serious flight

---

[5] The Court notes that his residence prior to incarceration was in Sutton, West Virginia, which is in the Northern District of West Virginia.

[6] Those factors are: (1) whether the stay applicant has made a strong showing of success on the merits of the appeal, (2) whether the absence of a stay will cause irreparable harm to the moving party, (3) whether the issuance of a stay will substantially injure the other interested parties, and (4) whether the issuance of a stay supports the public interest.

risk as the Government basically conceded by its silence on the matter in its ***Brief in Support of Pretrial Detention*** (ECF No. 13). As for the second factor, it is difficult to determine whether the Government would be harmed, given that the Defendant may avoid criminal prosecution because of deportation – at bottom, the Government simply harms itself. The third factor appears to be a wash – the Defendant would be harmed if detained, but if released, he can be deported, thus presenting a conundrum rendering this factor non-dispositive. However, under the fourth factor, the undersigned observes that the public interest lies in granting bond when a defendant qualifies for it, which is the case here. See United States v. Salerno, 481 U.S. 739, 755 (1987).

The Clerk is directed to send a copy of this Order to the Defendant, Counsel for the Defendant, the Assistant United States Attorney, the United States Marshal, and the United States Probation Office.

ENTER: May 30, 2025.



Omar J. Aboulhosn
United States Magistrate Judge

8